UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

|  |  |
|---|---|
| THOMAS E. OVERBY, JR.; and ABBY GEARHART, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANHEUSER-BUSCH, LLC,<br><br>Defendant. | Civil No. 4:21cv141 |

## ORDER

Plaintiffs Thomas E. Overby, Jr. and Abby Gearhart (collectively, "Plaintiffs" or "named Plaintiffs") are non-exempt, hourly employees at Defendant Anheuser-Busch, LLC's ("Anheuser-Busch" or "Defendant") Williamsburg, Virginia brewery. Plaintiffs have sued Anheuser-Busch because they allege they were required to perform uncompensated pre- and post-shift work in violation of the Federal Labor Standards Act ("FLSA"), the Virginia Wage Payment Act ("VWPA"), and the Virginia Overtime Wage Act ("VOWA"). *See generally* Am. Compl., ECF No. 96 ("Am. Compl."). This Court previously conditionally certified a collective action with regard to Plaintiffs' FLSA claim. *See* Order, ECF No. 37.

Currently before the Court are two motions: (1) Plaintiffs' Motion for Rule 23 Class Certification (ECF No. 106) (the "Motion to Certify") as to their VOWA and VWPA claims (Counts II, III, and IV of the Amended Complaint); and (2) Anheuser-Busch's Cross-Motion for Decertification (ECF No. 115) (the "Motion to Decertify") as

1

to Plaintiffs' FLSA claim (Count I of the Amended Complaint). For the reasons stated below, the Motion to Certify (ECF No. 106) is **GRANTED**, and the Motion to Decertify (ECF No. 115) is **DENIED**.

## I. BACKGROUND

Plaintiffs are brewery workers who allege that Anheuser-Busch, which operates the brewery, has failed to compensate them for mandatory pre- and post-shift tasks, in violation of the FLSA (Count I) and state law (Counts II–IV). More specifically, Plaintiffs allege that they and other similarly situated hourly, non-exempt workers at Anheuser-Busch's Williamsburg, Virginia brewery were routinely required to work extra time before and after their scheduled shifts, and that Defendant failed to pay them wages and overtime wages related to this work. Am. Compl. at ¶¶ 1–15. Defendant also failed to provide them with accurate wage statements. *Id.* at 103. Plaintiffs allege that Defendant, as a matter of company policy, pattern, or practice compensates employees only for their scheduled shift times, regardless of whether the employees work additional, mandatory time before and after such scheduled shifts. *See id.* ¶¶ 2–3, 42–52. During the COVID-19 pandemic, Plaintiffs were required to work additional uncompensated time—on top of the Company's pre-existing policy requiring Plaintiffs to work before and after scheduled shifts. From March 2020 through January 2023, the additional uncompensated time included, but was not limited to, mandatory COVID-19 screenings, sanitation protocols, and temperature checks. *See id.* ¶ 43.

In addition to bringing their own individual claims, Plaintiffs seek to prosecute this action on behalf of other, similarly situated brewery employees. For their federal claim (Count I), they seek to proceed under the FLSA's provision for collective actions. *See id.* ¶¶ 53–60 ("FLSA Collective Action Allegations"); *id.* ¶¶ 70–77 (FLSA cause of action). As to their state-law claims (Counts II–IV), Plaintiffs seek to proceed with class action under Rule 23 of the Federal Rules of Civil Procedure. *See id.* ¶¶ 61–69 ("Rule 23 VWPA and VOWA Class Action Allegations"); *id.* at ¶¶ 78–105 (state-law causes of action).

The named Plaintiffs, as well as former named Plaintiff Julie Glennon and several plaintiffs who have opted in to the conditionally certified FLSA collective action, have submitted sworn declarations describing their work and the time for which they and other employees were (or were not) paid. *See* ECF Nos. 18-1, 18-2, 18-3, 18-4. Plaintiffs also rely on deposition testimony and other exhibits to support their contentions. *See* Pls. Mem. Supp. Mot. R. 23 Class Cert. ("Pls. Mem. Supp."), Exs. 1–20, ECF Nos. 107-1 to 107-20.

According to Plaintiffs, "[b]y default, [Anheuser-Busch] pays Plaintiffs only for their scheduled shift hours, not the time that Plaintiffs record in [Anheuser-Busch]'s LTM timekeeping system." Pls. Mem. Supp. at 4 (citing Exs. 5 & 6, ECF Nos. 107-5 & 107-6). When an hourly employee works additional time outside their scheduled shift, "unless the additional time is previously scheduled or approved by an operating department manager, the employee will not be compensated for the additional time worked, even if that time is reflected in LTM." *Id.* at 4–5 (citing Exs. 2, 7 & 8, ECF

Nos. 107-2, 107-7 & 107-8). Despite this, Plaintiffs allege, "hourly employees regularly arrive at work approximately 20 to 30 minutes early, or more, to complete [uncompensated] pre-shift work, and stay approximately 15 minutes or more past the end of the shift to complete [uncompensated] post-shift work."[1] *Id.* at 5 (citing Ex. 9, ECF No. 107-9 and ECF Nos. 18-1, 18-2, 18-3 & 18-4). While it does not use LTM clock-in and clock-out times for compensation purposes, Anheuser-Busch does "use[ ] hourly employees' clock-in and clock-out times recorded in LTM to issue discipline, including for tardies and early quits." *Id.* (citing Exs. 2 & 10, ECF Nos. 107-2 & 107-10). As noted, the named Plaintiffs seek to certify a class of employees who performed uncompensated pre- and post-shift work.

## II.   DISCUSSION

The Court first addresses Plaintiffs' Motion to Certify, and then addresses Anheuser-Busch's Motion to Decertify. For the reasons below, the Court finds that the former should be granted, and the latter denied.

---

[1] The pre- and post-shift work includes "[c]ompleting sanitation protocols, including for food safety; donning Personal Protective Equipment ("PPE"), including safety shoes and gloves, safety glasses, and earplugs; reviewing AB provided work email accounts and notes entered by previous shifts; gathering required tools; traveling to assigned workstations; completing various paperwork, including checklists; and participating in pre-shift meetings, including with the next shift." Pls. Mem. Supp. at 5–6. "Additionally, from March 2020 through January 2023, AB implemented and required all hourly employees to complete additional pre-shift screening and safety checks in response to the COVID-19 pandemic, including temperature screens, hand washing, foot washing, donning face masks, and equipment sanitization." *Id.* at 6.

A.   **Class Certification Analysis**

Plaintiffs seek class certification of their state law claims under Federal Rule of Civil Procedure 23(b)(3). To establish their entitlement to certification, plaintiffs must satisfy seven requirements. First, the Fourth Circuit has held that Rule 23 implicitly requires (1) ascertainability, which means that the "members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). In addition, pursuant to Rule 23(a), plaintiffs must demonstrate (2) numerosity, (3) commonality, (4) typicality, and (5) adequacy. Fed. R. Civ. P. 23(a); *see also* Fed. R. Civ. P. 23(g) (requiring that court further determine adequacy of proposed class counsel). Under Rule 23(b)(3), plaintiffs must also show (6) predominance and (7) superiority. Fed. R. Civ. P. 23(b)(3). The Court addresses each requirement below.[2]

---

[2] In its Response in Opposition to the Motion to Certify, Anheuser-Busch makes two threshold objections before opposing class certification on the merits. *See* Def. Resp. Opp'n at 13–15, ECF No. 116 ('Def. Resp. Opp'n"). First, Anheuser-Busch renews its objection to class certification on the grounds that "applying Rule 23 to plaintiffs' VWPA claims would violate the Rules Enabling Act." *Id.* at 13. As Anheuser-Busch acknowledges, the Court has already rejected this argument, *see* Order, ECF No. 38, and the Court declines to revisit that determination. Second, Anheuser-Busch argues that plaintiffs have waived any argument that the proposed class should be certified as to Count Four of the Complaint, which alleges that Anheuser-Busch failed to provide employees with accurate wage statements. Def. Resp. Opp'n at 14 ("[P]laintiffs never once address how that claim meets Rule 23's requirements, and thus waive any argument that it does so."). The Court disagrees. As Plaintiffs point out, they specifically request that the class be certified as to Count Four, Pls. Mem. Supp. at 2, and in general the wage-statement claim travels with the other claims for failure to pay regular and overtime wages, *see* Pls. Reply at 4, ECF No. 119 ("Pls. Reply"). That is, "Anheuser-Busch's policies led to underpayment of owed wages, and as a result [proposed class members'] paychecks inaccurately reflected their hours worked." *Id.* The Court finds that no claim has been waived by Plaintiffs.

### 1. *Ascertainability*

"A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358. Here, Plaintiffs seek to certify the following class:

> All individuals who are currently, or were formerly, employed at Anheuser-Busch's Williamsburg brewery as non-exempt employees subject to Anheuser-Busch's LTM timekeeping system at any time from July 1, 2020, through the date of final disposition of the action.

Pls.' Mem. Supp. at 3. This definition provides objective criteria which allow ready identification of class members, and Defendant does not appear to dispute the issue of ascertainability. Accordingly, Plaintiffs have met their burden to establish ascertainability of the class.

### 2. *Numerosity*

Plaintiffs must show that the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no "magic number for numerosity; instead, numerosity depends on the 'particular circumstances of the case and generally, unless abuse is shown, the trial court's decision on this issue is final.'" *Hatcher v. Cnty. of Hanover*, No. 3:23cv325, 2024 WL 3357839, at *3 (E.D. Va. July 10, 2024) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967)). Here, Plaintiffs say there are "approximately 500 employees" who are potential class members, Pls. Mem. Supp. at 3, while Defendants estimate that there are "about 400 hourly employees." Def. Mem. Supp. at 4. Defendants do not appear to contest the issue of numerosity, and, regardless, even taking the smaller of these numbers, the Court finds that joinder of so many proposed class

members would be impracticable. Accordingly, Plaintiffs have met the numerosity requirement.

### 3. *Commonality and predominance*

The issue of commonality requires Plaintiffs to show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). The issue of predominance requires Plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The latter test is "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). "For that reason, the commonality requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Hatcher*, 2024 WL 3357839, at *4 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)) (cleaned up).

Anheuser-Busch concentrates its argument on the commonality and especially the predominance factors. The lion's share of its briefing is devoted to arguing that "[t]here are too many variables among putative class members and opt-in plaintiffs," such that "individualized inquiries will swamp any issues common to the putative class." Def. Resp. Opp'n at 3–4, 15; *see generally* Def. Resp. Opp'n at 15–26 (arguing predominance factor). To be sure, Anheuser-Busch identifies numerous differences and distinctions in the evidence and deposition testimony of proposed class members. However, the Court is not convinced that these differences preclude a finding for Plaintiffs on the issue of predominance.

After all, "[i]f one zooms in close enough on anything, differences will abound." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 312 (D. Md. 2014) (quoting *Kasten v. Saint–Gobain Performance Plastics Corp.,* 556 F. Supp. 2d 941, 957 (W.D. Wis. 2008)) (discussing related FLSA certification standard); *see also* Pls. Reply at 1 (quoting similar case). On the other hand, of course, it is also true that, "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). In seeking the *appropriate* level of generality though which to view the case, "[w]hat we are looking for is a common issue the resolution of which will advance the litigation." *Id.* Further, the Court must ask whether such common issue or issues predominate.

Here, the Court finds that there are common issues that will advance the litigation, and that those issues predominate over any questions affecting only individual members. With regard to commonality, the Court finds that that there are questions of both law and fact common to the class. The common nucleus of operative facts is that Defendant did not compensate class members for time spent on mandatory pre- and post-shift tasks, including compliance with COVID-19 protocols. The common issue of law is whether Defendant's failure to provide such compensation violates Virginia law. This is sufficient to satisfy the commonality requirement.

With regard to predominance, despite Anheuser-Busch's protestations to the contrary, the Court agrees with the Plaintiffs that the overarching issue of Anheuser-Busch's alleged policy and practice with regard to paying hourly employees only for their scheduled shift times (absent special circumstances), despite requiring

8

additional pre- and post-shift work, is the primary issue to be litigated. *See* Pls. Reply at 1 ("[E]ach class member, no matter who they were and how they went about beginning and ending their workday, was subject to identical violative policies and practices."). Such "common conduct" by Anheuser-Busch "bear[s] on the central issue in the litigation"—whether the proposed class members must receive compensation for required pre- and post-shift work. *Hatcher*, 2024 WL 3357839, at * 4 (quoting *EQT Prod. Co.*, 764 F.3d at 366). For this reason, Plaintiffs have met their burden with regard to the commonality and predominance factors.

### 4. *Typicality*

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart*, 255 F.3d at 146 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982)). "'[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct.'" *Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539, 547 (E.D. Va. 2018) (quoting *Plotnick v. Comput. Scis. Corp. Deferred Comp. Plan for Key Execs.*, 182 F. Supp. 3d 573, 582 (E.D. Va. 2016)).

Here, as discussed above, the Plaintiffs allege a "unitary course of conduct" that applied to both the named plaintiffs and the proposed class members, with respect to Anheuser-Busch's policies which required uncompensated pre- and post-shift work and with respect to the uncompensated time spent on COVID-19 protocols. The

named plaintiffs have the same interest and suffered the same alleged injury as the proposed class members—they were required to perform pre- and post-shift work without compensation and without accurate wage statements. The Court finds that the claims of the named Plaintiffs are typical of the proposed class.

     5.    *Adequacy*

With regard to adequacy, Plaintiffs must prove that the representative parties and class counsel will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4), (g)(4). The Court has already found above that the named Plaintiffs "'possess the same interest and suffer the same injury'" as the proposed class members. *Lienhart*, 255 F.3d at 146 (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 156); *see also Amchem Prods.*, 521 U.S. at 626 n.20 (noting that the "adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)" because they look at whether a class action is "economical" and "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence") (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 157, n. 13). Accordingly, the Court finds that the named Plaintiffs will fairly and adequately protect the interests of the class.

Additionally, proposed class counsel has invested significant time and resources into identifying the claims and proposed class and in litigating this case to this point. Proposed counsel also has significant experience in class actions and wage and hour claims specifically. *See* Pls. Mem. Supp., Exs. 17 & 18, ECF Nos. 107-17 & 107-18. The Court further agrees with Plaintiffs that "[t]he time and effort proposed

class counsel have already expended in the pleading and discovery stages of this case demonstrates that they have and will commit sufficient resources to represent the proposed class." Pls. Mem. Supp. at 21. Accordingly, the Court finds that proposed class counsel fairly and adequately represent the interests of the class.

      6.     *Superiority*

Plaintiffs must show that proceeding as a class "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this determination, the Court must consider ""(1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 218 (E.D. Va. 2015) (quoting *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997) (summarizing factors set out in Fed. R. Civ. P. 23(b)(3))).

Here, with regard to the first two factors noted above, Plaintiffs state that they "are aware of no other lawsuits" raising similar issues, Pls. Mem. Supp. at 18, and Anheuser-Busch does not point to any such litigation. Nor does it object to the desirability of concentrating the litigation in this forum, which is after all the home district for the brewery and most, if not all, of the relevant events. Rather, Anheuser-Busch concentrates its opposition with regard to this factor on an argument that the resulting litigation will not be manageable. *See* Def. Resp. Opp'n at 26–27. Its basis for this argument is, again, its contention that there is too much variation in the facts and potential damages applicable to the different class members, which will require

11

"plaintiff-by-plaintiff mini trials." *Id.* at 26. This is essentially a repeat of Anheuser-Busch's arguments under the commonality and predominance factors, and has already been addressed above. The Court finds that these concerns are not sufficient to prevent the class action from being the superior method for fairly and efficiently adjudicating the matters in controversy here. While individual variations in the type and extent of pre- and post-shift work performed could expand the required litigation, the Court does not find that the problem is so serious as to require class members to bring their claims in separate suits, given the degree of commonality present in the issues of both law and fact. In addition, Plaintiffs contend that representative evidence and time and damages models will assist in the manageability of the litigation. Pls. Reply at 12–13. The Court finds that Plaintiffs have met their burden to show that, compared to the available options, a class action is the superior method of adjudication for these claims.

### B. FLSA Decertification Analysis

"District courts within the [Fourth Circuit] have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA." *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014).

> 'First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is 'similarly situated' in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.'

12

*Id.* (quoting *Rowls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007). If, at the second step, "it is apparent that plaintiffs are not similarly situated, the court may decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice." *Id.* at 468.

This case is now at the second step in this inquiry, pursuant to Anheuser-Busch's Motion to Decertify. Mot. Decertify, ECF No. 115. The FLSA does not define "similarly situated." "However, courts have determined if potential class members are similarly situated by assessing the existence of 'issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member.'" *LaFleur*, 30 F. Supp. 3d at 468 (quoting *Houston et al. v. URS Corp. et al.,* 591 F. Supp. 2d 827, 832 (E.D. Va. 2008)).

> 'That is not to say that there can be no differences among class members or that an individualized inquiry may not be necessary in connection with fashioning the specific relief or damages to be awarded to each class member. Rather, the inquiry is whether the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members.'

*Id.* (quoting *Houston*, 591 F. Supp. 2d at 832).

Whether to decertify is within the district court's broad discretion. *Andreana v. Va. Beach City Pub. Sch.*, No. 2:17cv574, 2019 WL 1756530, at *3 (E.D. Va. Apr. 19, 2019). "Three factors are useful in making this determination: '(1) the disparate factual and employment settings of the individual plaintiffs; (2) defenses which appear to be individual to each plaintiff; and (3) fairness and procedural

13

considerations.'" *Id.* (quoting *Sharer v. Tandberg, Inc.*, No. 1:06cv626, 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007)).

Anheuser-Busch does not engage in extensive separate argument on the issue of FLSA decertification; rather, it relies on "the same evidence outlined" with respect to its opposition to Rule 23 certification. While the Rule 23 inquiry is separate and different from the FLSA certification inquiry, they do share a broad focus on the similarity of the plaintiffs' claims in relation to their differences. Here, the Court finds that Defendant's arguments with regard to decertifying the FLSA collective action fail for essentially the same reasons that its arguments against Rule 23 certification fail.

"A collective action does not necessitate that there be no differences among class members, nor does it prohibit individualized inquiry in connection with fashioning the specific relief or damages to be awarded to each class member." *Butler,* 47 F. Supp. 3d at 311 (quoting *LaFleur*, 30 F. Supp. 3d at 474). Rather, "[t]he court should determine whether 'there is a meaningful nexus that binds Plaintiffs' claims together and that the similarities in their claims outweigh their differences.'" *Id.* (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008)). And "[t]he existence of a common policy 'may assuage concerns about plaintiffs' otherwise varied circumstances.'" *Id.* (quoting *Crawford v. Lexington–Fayette Urban Cnty. Gov't,* No. 06cv299, 2008 WL 2885230, at *5 (E.D. Ky. July 22, 2008); *see also Hill v. Muscogee Cnty. Sch. Dist.*, No. 403cv60, 2005 WL 3526669 at *3 (M.D. Ga. 2005) ("If there is sufficient evidence of an employer's pattern of subjecting employees to the same

improper practice, that would be sufficient to warrant a finding of similarity justifying collective adjudication."). As noted above, Anheuser-Busch's policy and whether it resulted in uncompensated work is a central issue in this case, and for this reason, as with the Rule 23 class determination, the Court finds that the "similarities in [plaintiffs'] claims outweigh their differences." *Butler*, 47 F. Supp. 3d at 311 (quoting *Falcon*, 580 F. Supp. 2d at 540). Accordingly, the Court finds that Plaintiffs have met their burden to show they are "similarly situated" for purposes of maintaining a collective action under 29 U.S.C. § 216(b).

### III. CONCLUSION

For the foregoing reasons, the Motion to Certify (ECF No. 106) is **GRANTED**, and the Motion to Decertify (ECF No. 115) is **DENIED**.

The Court **CERTIFIES** the following Rule 23 Class:

> All individuals who are currently, or were formerly, employed at Anheuser-Busch's Williamsburg brewery as non-exempt employees subject to Anheuser-Busch's LTM timekeeping system at any time from July 1, 2020, through the date of final disposition of the action.

Pls. Mem. Supp. at 3.

Defendant is **ORDERED** to provide within twenty-one (21) days to Plaintiffs' counsel an updated listing of the names, last known mailing addresses, last-known cell phone numbers, email addresses, and dates of employment of all class members.

It is further **ORDERED** that named Plaintiffs Thomas E. Overby, Jr., and Abby Gearhart are designated as the class representatives, and that Zipin, Amster & Greenberg, LLC and Butler Curwood PLC, attorneys of record for the said named Plaintiffs, are authorized to serve as counsel for the class in this action.

15

It is further **ORDERED** that Plaintiffs shall mail to each listed class member a copy of Plaintiffs' proposed Notice (Pls. Mem. Supp., Ex. 20, ECF No. 107-20), which is hereby **APPROVED** by this Court, and class members shall have 60 days from the mailing of notice to opt out of this action.

The Clerk is **REQUESTED** to deliver a copy of this Order to counsel of record.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

March 27, 2025
Norfolk, Virginia