UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| THOMAS E. OVERBY, JR., and ABBY GEARHART, individually and on behalf of all others similarly situated<br><br>*Plaintiffs,*<br><br>v.<br><br>ANHEUSER-BUSCH, LLC,<br><br>*Defendant*. | Case No.: 4:21-cv-00141-AWA-DEM |

**PLAINTIFFS' COMBINED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO LIFT STAY AND MOTION FOR CLARIFICATION**

Named Plaintiffs Thomas E. Overby, Jr. and Abby Gearhart, on behalf of themselves, all opt-in plaintiffs, and the Rule 23 class ("Plaintiffs"), through their undersigned counsel, respectfully submit this combined memorandum of law in support of their Motion to Lift Stay and Motion for Clarification. In their Motion to Lift Stay, Plaintiffs request that the Court lift the current stay for the limited purpose of considering and ruling on Plaintiffs' Motion for Clarification. In their Motion for Clarification, Plaintiffs move the Court for an order clarifying the Court's March 27, 2025, Order granting Plaintiffs' Motion for Rule 23 Class Certification, and denying Defendant Anheuser-Busch, LLC's ("Defendant" or "AB") Cross-Motion for Decertification, Doc. 127 (hereinafter "Certification Order"). For the reasons provided below, Plaintiffs respectfully request that the Court grant both motions.

**BACKGROUND**

In this action, Plaintiffs seek recovery of unpaid wages and statutory damages for themselves and others under the federal Fair Labor Standards Act ("FLSA"), 29 §§ U.S.C. 207 *et*

1

*seq.*; the Virginia Wage Payment Act ("VWPA"), Virginia Code §§ 40.1-29 *et seq.*; and the Virginia Overtime Wage Act ("VOWA"), Virginia Code §§ 40.1-29.2 *et seq.* Plaintiffs allege that they performed similar duties and were subject to the same pay policies and practices implemented by Defendant in violation of the FLSA, VWPA, and VOWA. Specifically, Plaintiffs allege they performed unpaid pre- and post-shift work, including unpaid overtime hours, which unpaid work occurred both on-the-clock and off-the-clock. On September 21, 2022, the Court conditionally certified this matter as a collective action under the FLSA. Doc. 37.

Beginning on April 18, 2024, the Parties engaged in motions practice surrounding Rule 23 class certification and collective action decertification that concluded on August 9, 2024. Docs. 106–22. Thereafter, on December 17, 2024, the Fourth Circuit issued its decision in *Stafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671 (4th Cir. 2024) (hereinafter "*Bojangles*"). Defendant filed a "Notice of Supplemental Authority" on January 3, 2025, to notify the Court of *Bojangles*. Doc. 125. Plaintiffs filed their Response to Defendant's Notice on January 10, 2025. Doc. 126.

In *Bojangles*, the district court certified broad classes of Bojangles restaurant shift managers working at myriad locations across two states—all alleged to have worked off-the-clock doing various tasks based mostly on the general existence of a pre-work checklist. The Fourth Circuit held that, in certifying the class, the district court improperly found commonality for all claims despite a diverse set of claims consisting of pre- and post-shift off-the-clock work, and time-shaving, by relying exclusively on the employer's general policy of completing an opening shift "Opening Checklist," which was completed pre-shift and off-the-clock. *See Bojangles*, 123 F.4th at 679 ("[B]ecause of the diversity of claims involved in this class action, a common question exclusive to pre-shift work will not satisfy Rule 23(b)(3)'s predominance requirement alone. Indeed, resolution of whether or not the Opening Checklist mandates off-the-clock pre-shift work

2

does not 'resolve' the time-shaving claims or claims of unpaid off-the-clock wages at any other time."). Accordingly, *Bojangles* served to reinforce longstanding caselaw that class certification is inappropriate where a "vague and overly general 'policy' allegedly mandated . . . off-the-clock work" and where "overly broad class definitions" might include individuals not subject to any unlawful policy. *See id.* at 678.

On March 27, 2025, the Court, via the Certification Order, granted Plaintiffs' motion for Rule 23 class certification and ordered Defendant to provide an updated listing of Rule 23 class members to Plaintiffs' counsel within twenty-one (21) days (*i.e.*, by April 17, 2025). Doc. 127.

Shortly after the Court issued its Certification Order, Defendant indicated it would be filing a Petition for Permission to Appeal the Court's Certification Order pursuant to Federal Rule of Civil Procedure 23(f) (hereinafter Defendant's "Petition"). Accordingly, and in the interest of judicial efficiency, Plaintiffs agreed to join Defendant in moving the Court to stay all district court proceedings, including Defendant's production of an updated listing of Rule 23 class members, until final resolution of class certification, including the resolution of Defendant's Rule 23(f) petition and any appeals arising thereof. Doc. 128.

Defendant then filed its Petition on April 10, 2025. Doc 129–1. In its Petition, Defendant relies heavily on *Bojangles* and claims that this Court "simply ignored it" in certifying the class. Doc. 129–1 at ECF p. 22; see *id.* at ECF p. 7 ("[T]he court did not distinguish, discuss, or even cite the recent *Bojangles* decision."); *id.* at ECF p. 15 ("The court did not cite *Bojangles*.").

On April 17, 2025, the Chamber of Commerce (hereinafter the "Chamber") filed a brief in the Fourth Circuit as *amicus curiae* in support of Defendant's Petition. *See* Exhibit A, Brief of Chamber of Commerce. The Chamber also highlights *Bojangles*, claiming this Court "ignored binding Fourth Circuit precedent." Ex. A at ECF p. 9; *see id.* at ECF p. 10 ("This Court's decision

3

in *Bojangles* should have led the District Court to deny certification, but the District Court did not even cite the decision."); *id.* at ECF p. 11 ("The District Court erred in ignoring *Bojangles*."); *id.* at ECF p. 12 ("The District Court failed to ground its decision in any binding Fourth Circuit precedent or other appellate court decisions.").

## ISSUES PRESENTED FOR CLARIFICATION

1. Did the Court consider *Bojangles* when it granted Plaintiffs' Motion for Rule 23 Class Certification and issued the Certification Order?

2. If the Court did consider *Bojangles*, what impact, if any, did it have on the Court's Certification Order and decision to grant class certification?

## ARGUMENT

As a preliminary matter, because the Court has stayed all district court proceedings "until final resolution of class certification following Defendant's Rule 23(f) petition and any appeals arising thereof," Doc. 130, and because Plaintiffs' Motion for Clarification implicates Defendant's Petition and any potential appellate proceedings arising therefrom, Plaintiffs respectfully submit that good cause exits for the Court to lift the stay in this matter for the limited purpose of considering and ruling on Plaintiffs' Motion for Clarification.

As to Plaintiffs' Motion for Clarification, the Certification Order (Doc. 127) does not cite or discuss *Bojangles*, despite the Court's clear consideration of the same in light of the Parties' briefing and supplemental argument provided in January 2025 prior to the Court issuing the Certification Order. Docs. 125–26. To Plaintiffs, the Court's consideration of *Bojangles* was abundantly clear in granting Plaintiffs' motion for class certification. Accordingly, and in light of the arguments Defendant makes in its pending Petition, Plaintiffs request the Court to clarify the issues presented *supra* pursuant to Federal Rule of Civil Procedure 60(a).

4

While the Federal Rules contain no specific provision allowing for a "motion for clarification," *see United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011), "these motions are generally recognized and allowed by federal courts." *Barnes v. District of Columbia*, 289 F.R.D. 1, 13 n.6 (D.D.C. 2012). At least two circuits, including the Fourth Circuit, have held that Rule 60(a), which allows for correction "from oversight or omission," may be used "to correct a failure to memorialize part of its decision," which is basically the question at issue here. *Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir. 2012) (citation omitted); *see also Sartin v. McNair L. Firm PA*, 756 F.3d 259, 266 (4th Cir. 2014). Under this authority, Rule 60 may be used "for clarification and explanation . . . even in the absence of ambiguity, if necessary for enforcement." *Garamendi*, 683 F.3d at 1080.

In general, Rule 60(a) authorizes a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." The Rule gives the district court discretionary authority, and a court of appeal's review is for abuse of discretion. *See Caterpillar Fin. Servs. Corp. v. F/V Site Clearance I*, 275 F. App'x 199, 204 (4th Cir. 2008) (per curiam) (citing *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997)). Discretion, such as Rule 60(a) confers, may be abused "by an exercise that is flawed by erroneous factual or legal premises." *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993).

Rule 60(a) however may not be used to reconsider a matter that has already been decided, as previously explained by the Fourth Circuit:

> The basic distinction between clerical mistakes and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of blunders in execution whereas the latter consist of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination.

5

*Sartin*, 756 F.3d at 265 (quoting *Rhodes v. Hartford Fire Ins. Co.*, 548 F. App'x 857, 859–60 (4th Cir. 2013) (per curiam)); *accord Pruzinsky v. Gianetti (In re Walter)*, 282 F.3d 434, 440 (6th Cir. 2002)); *accord Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) ("Clerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculation are within Rule 60(a)'s scope; missteps involving substantive legal reasoning are not.")

But Rule 60(a) is not simply confined to fixing typographical and other clerical errors. The Rule's text also authorizes a court to correct "a mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). Such a mistake occurs when there is an inconsistency between the text of an order or judgment and the district court's intent when it entered the order or judgment. "A 'mistake arising from oversight or omission' also includes an unintended ambiguity that obfuscates the court's original intent." *Sartin*, 756 F.3d 266. Rule 60(a) authorizes a district court to correct these mistakes and/or omissions to conform the text with its original intent. *Id.* Furthermore, rule 60(a) "allows for clarification and explanation, consistent with the intent of the original judgment, even in the absence of ambiguity, if necessary for enforcement[.]" *Id.* (emphasis original) quoting *Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir. 2012).

Thus, this Court has the authority to correct or clarify the Certification Order to remove an ambiguity, fix an omission, or even provide more explanation to facilitate enforcement of what it considers to be an objectively unambiguous Order.

Despite the Certification Order not citing to or discussing *Bojangles*, the Court nevertheless considered it in granting class certification. This is evidenced by: (1) Defendant's Notice of Supplemental Authority (Doc. 125) and Plaintiffs' Response thereto (Doc. 126) were filed before the Court issued its Certification Order; (2) Defendant's Notice and Plaintiffs' Response were

6

considered contemporaneously with Plaintiffs' Motion for Rule 23 Class Certification; and (3) both documents discussed and argued the applicability and significance of *Bojangles*.

Indeed, *Bojangles* did not prevent the Court from finding that there are questions of law or fact common to the class. Doc. 127 at 8 ("With regard to commonality, the Court finds that that there are questions of both law and fact common to the class. The common nucleus of operative facts is that Defendant did not compensate class members for time spent on mandatory pre- and post-shift tasks, including compliance with COVID-19 protocols. The common issue of law is whether Defendant's failure to provide such compensation violates Virginia law. This is sufficient to satisfy the commonality requirement."). Nor did it prevent the Court from finding that common questions of law and fact predominate over any questions affecting only individual members of the class. *See id.* at 8–9 ("[T]he overarching issue of Anheuser-Busch's alleged policy and practice with regard to paying hourly employees only for their scheduled shift times (absent special circumstances), despite requiring additional pre- and post-shift work, is the primary issue to be litigated . . . . Such 'common conduct' by Anheuser-Busch 'bear[s] on the central issue in the litigation'—whether the proposed class members must receive compensation for required pre- and post-shift work.").

In its Petition, Defendant positions *Bojangles* as the linchpin of its argument. Defendant contends that *Bojangles* represents something of a sea change with respect to the certifiability of the class and that this Court "simply ignored it." Doc. 129–1 at ECF p. 22.  But as the Court undoubtedly recognized in issuing its Certification Order, Defendant's suggestion strains credulity as *Bojangles* merely served to reinforce longstanding caselaw that class certification is inappropriate where a "vague and overly general 'policy' allegedly mandated . . . off-the-clock work" and where "overly broad class definitions" might include individuals not subject to any

unlawful policy. *Bojangles* 123 F.4th at 678. In fact, in *Bojangles*, the Fourth Circuit specifically embraced its previous ruling in *Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) and reaffirmed its commitment to "ensure that commonality is not based on . . . . semantic dexterity." *Bojangles* 123 F.4th at 680. The Court applied these same principles in its Certification Order.

Defendant frames the omission of *Bojangles* in the Certification Order as reversable error. It pairs this argument with another—its attempt to analogize the facts of *Bojangles* with those of this matter, flippantly referring to the across-the-board policies and practices at issue here, collectively, as allegations of "a secret policy of requiring unpaid ***off-the-clock*** work[.]" Doc. 129–1 at ECF p. 18 (emphasis added). But in granting class certification, the Court obviously recognized that the facts here are nothing like *Bojangles*. This is for four reasons.

First, as the Court recognized, Plaintiffs' claims consist of both on-the-clock claims (which represent the majority of unpaid work time in this matter), and off-the-clock claims (for mandatory COVID-19 screening and sanitation protocols). Second, the policies at issue were no secret, nor did the Court make such a finding. AB has admitted all of them and insists the time associated with them was non-compensable, including (1) AB's policy of compensating Plaintiffs only for their scheduled shift hours, not the time that Plaintiffs record in AB's LTM timekeeping system;[1] (2) AB's policy of requiring all employees to be at their workstation "ready to work" at their scheduled shift start time and remain at their workstation until their scheduled shift end time;[2] (3) AB's policy

---

[1] *See* Dkt. 107-5, Transcript of Deposition of Kassandra Elbert (hereinafter "Elbert Depo."), at 17:16–19:6 ("Q. So in other words, they're paid for their scheduled shift hours, not the clock-in and clock-out times. Is that right? A. Correct."); Dkt. 107-6, Transcript of Deposition of Laura Borchardt (hereinafter "Borchardt Depo."), at 26:5–12 ("Q. So in other words, employees are not paid pursuant to their badge in-and-out times, the time that's reflected in that timekeeping system, they're instead paid pursuant to their scheduled shift hours. Is that fair to say? . . . A. Yes.").

[2] *See* Dkt. 107-2, Transcript of Deposition of Sarah Schilling Ruhland, Defendant's Corporate Designee (hereinafter "Schilling Depo."), Vol. 1, at 194:8–19; Dkt. 107-10, Email re: Discipline

of requiring all employees to don and doff Personal Protective Equipment ("PPE") prior to entering the brewery floor and proceeding to their assigned workstations;[3] and (4) AB's policy of requiring all hourly employees to complete additional pre-shift, off-the-clock screening and safety checks from March 2020 through January 2023 in response to the COVID-19 pandemic, including temperature screens, hand washing, foot washing, donning face masks, and equipment sanitization.[4] Third, these policies applied to **100%** of putative class members during the time that they were in effect. Fourth, these policies are specific and isolable.

Accordingly, in its Certification Order, the Court implicitly recognized that the policies at issue here are nothing like the "conclusory assertions of some highly generalized company policy" that were at issue in *Bojangles*. 123 F.4th at 678. Indeed, the Court acknowledged the specificity of Plaintiffs' assertions and the policies at issue by citing and describing them in detail. *See* Doc. 127 at 5 n. 1 ("The pre- and post-shift work includes '[c]ompleting sanitation protocols, including for food safety; donning Personal Protective Equipment ("PPE"), including safety shoes and gloves, safety glasses, and earplugs; reviewing AB provided work email accounts and notes

---

for Clocking in at Scheduled Start Time ("The expectation is that you are at your workstation ready to work at your start time and that you remain there until your end time.")

[3] *See* Dkt. 107-14, Email re: PPE Compliance and Expectations ("Wearing the correct PPE for the task in compliance with our PPE Matrix is 1 of the 4 Golden Rules! 100% Compliance is the Expectation & is a Job Requirement! Thank you for wearing your PPE!"); Dkt. 107-2, Schilling Depo., Vol. 1, at 202:19–203:8; Dkt. 107-3, Transcript of Deposition of Thomas Michael Evanowski (hereinafter "Evanowski Depo."), at 31:15–34:15; Dkt. 107-4, Transcript of Deposition of Tom Jokerst (hereinafter "Jokerst Depo."), at 76:9–18; 211:18–216:9.

[4] *See, e.g.*, Dkt. 18-1, Declaration of Opt-in Plaintiff Julie Glennon (hereinafter "Glennon Decl."), ¶ 14-17; Dkt. 18-2, Declaration of Named Plaintiff Thomas E. Overby, Jr. (hereinafter "Overby Decl."), ¶ 10; Dkt. 18-3, Declaration of Opt-in Plaintiff Floyd South (hereinafter "South Decl."), ¶ 10; Dkt. 18-4, Declaration of Named Plaintiff Abby Gearhart (hereinafter "Gearhart Decl."), ¶ 12-13; Dkt. 107-15, Mandatory COVID-19 Expectations for Employees; Dkt. 107-16, Email re: COVID Policy Update.

entered by previous shifts; gathering required tools; traveling to assigned workstations; completing various paperwork, including checklists; and participating in pre-shift meetings, including with the next shift.' Pls. Mem. Supp. at 5–6. 'Additionally, from March 2020 through January 2023, AB implemented and re-quired all hourly employees to complete additional pre-shift screening and safety checks in response to the COVID-19 pandemic, including temperature screens, hand washing, foot washing, donning face masks, and equipment sanitization.' *Id.* at 6."). Indeed, the only relevant similarity between *Bojangles* and this case is that both were certified as wage & hour class actions and the employers' decision to file Rule 23(f) Petitions. [5]

Thus, it is clear that the Court considered *Bojangles* in issuing the Certification Order. Clarification of this point, along with any impact *Bojangles* had on the Certification Order, would help "correct a failure to memorialize part of [the Court's] decision," *Garamendi*, 683 F.3d at 1079, along with promoting "clarification and explanation . . . even in the absence of ambiguity, if necessary for enforcement," which applies here as defendant has filed its Petition with the sole purpose of seeking to prevent enforcement of the Order. *Id.* at 1080. Plaintiffs thus respectfully request that the Court issue an order clarifying whether it considered *Bojangles* and the impact, if any, that it had on the Court's Certification Order and decision to grant class certification.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) lift the stay of this matter for the limited purpose of considering and ruling on Plaintiffs' Motion for Clarification; and (2) issue an order clarifying the Court's Certification Order with respect to the

---

[5] Of note, in *Bojangles*, only "an estimated 80% of prospective class members likely worked an opening shift and had thus conducted off-the-clock pre-shift work while completing tasks on the Opening Checklist." 2024 U.S. App. LEXIS 31951, at *11. Yet the Fourth Circuit noted no disagreement with the district court's finding that common issues predominated for this component of the plaintiffs' claims. *See id.*

Court's consideration of *Bojangles* and any impact it had on the Certification Order.

Respectfully submitted this April 18, 2025,

BY:

 */s/ Robert W.T. Tucci*
Robert W.T. Tucci (VSB #97446)
Gregg C. Greenberg (VSB #79610)
Thomas J. Eiler (admitted *pro hac vice*)
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone:     (301) 587-9373
Facsimile:     (240) 839-9142
rtucci@zagfirm.com
ggreenberg@zagfirm.com
teiler@zagfirm.com

Craig J. Curwood (VSB #43975)
Zev H. Antell (VSB # 74634)
Samantha R. Galina (VSB # 96981)
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413
craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

*Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

On April 18, 2025, I served ☐ *the original* ☒ *a true copy* of the foregoing document entitled:

- **PLAINTIFFS' COMBINED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO LIFT STAY AND MOTION FOR CLARIFICATION**

on all the appearing and/or interested parties in this action as follows:

Robert G. Lian, Jr. (VSB #36406)
James E. Tysse (VSB #73490)
Katherine I. Heise (admitted *pro hac vice*)
Margaret O. Rusconi (admitted *pro hac vice*)
Benjamin R. Saul (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street N.W.
Washington, D.C., 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
blian@akingump.com
jtysse@akingump.com
kheise@akingump.com
mrusconi@akingump.com
saulb@akingump.com

*Counsel for Defendant*

☐ **(BY MAIL)** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Silver Spring, Maryland in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **(BY OVERNIGHT MAIL)** I am personally and readily familiar with the business practice of Zipin, Amster, & Greenberg LLC for collection and processing correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by the USPS for overnight delivery.

☒ **(BY ELECTRONIC TRANSMISSION)** I caused said document(s) to be served via electronic transmission through either the Court's CM/ECF system, via electronic mail, or an electronic service provider to the addressee(s) listed above on the date below.

☐ **(BY PERSONAL SERVICE)** I delivered the foregoing document by hand delivery to the addressed named above.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia that the foregoing is true and correct.

Executed on April 18, 2025, at Silver Spring, Maryland.

                                                  _/s/ Robert Tucci_
                                                  Robert W.T. Tucci